CA No. 12-56584
DC No. 2:11-cv-04252-AG-JPR

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Cross-defendant-Third-party-defendant-Appellee*,

v.

JEROLD M. GORSKI, an individual,
on Behalf of Himself (and All Others Similarly Situated on TPC),
*Defendant-Cross-complainant-Third-party-plaintiff-Appellant*,

v.

EDUCATIONAL CREDIT MANAGEMENT CORPORATION, GREAT LAKES
HIGHER EDUCATION GUARANTY CORPORATION, GREAT LAKES
HIGHER EDUCATION CORPORATION, UNITED STATES DEPARTMENT
OF EDUCATION, ARNE DUNCAN, in his official capacity as Secretary of the
United States Department of Education, UNITED STATES DEPARTMENT OF
JUSTICE, ERIC HOLDER, in his official capacity as Secretary of the United
States Department of Justice, GOLDSMITH & HULL, A.P.C., WILLIAM I.
GOLDSMITH, JACK D. HULL, ERIC S. MINTZ, ROES 1-10
*Third-party-defendants-Appellees*.

APPEAL FROM THE UNITED STATES DISTRICT COURT
ANDREW GUILFORD, JUDGE (CASE NO. CV 11-04252 AG(JPRx))

## APPELLANT GORSKI'S REPLY TO ANSWERING BRIEFS OF (1) THE
## GREAT LAKES ENTITIES (2) ECMC, & (3) THE UNITED STATES

Jerold M. Gorski, Esq. (SBN 194319)
PO Box 60740; Irvine, CA 92602
T 714-928-2842; F 707-215-6261
jeroldmgorski@yahoo.com
*Appellant, Pro Se* (in this Court)

The Opposition Parties[1] arguments boil down to this: whatever they claim to be the amount owing is the amount owing no matter what. They argue that it doesn't matter that (1) they clearly added $148.81 in excess interest between December 16, 1998 and March 16, 1998; (2) they clearly refused to correct this error (e.g., apparently ECMC's Joel Schoenecker "advised that no further response is necessary" to any of my concerns and requests; Great Lakes refused to respond too -- quite clearly making the same decision to ignore me); (3) they don't have a full accounting; (4) they wrongfully transferred the debt during my bankruptcy; (5) they refused to allow any payoff, including by not allowing consolidation during my bankruptcy (and refused any payoff for many months thereafter); (6) they refused to allow consolidation or payoff for the correct amount from no earlier than October 1999 through to today; (7) they refused to properly validate the debt in 1999 or at any time since; (8) they don't have sufficient evidence to properly do a default prove up in state court; (9) the U.S. produced only a handful of documents in response to my 2011 FOIA/Privacy Act requests; (10) new documents were produced throughout the litigation and as late as March/April 2012 (after motions to compel and dismissals); (11) numerous categories of documents including key documents remain unaccounted for; (12) I was denied my right to inspect any electronically stored information; (13) Canlas' declarations are clearly defective; (14) the NSLD documents are out of sequence and such information was obviously not entered contemporaneously with the events they purportedly reflect; and (15) they destroyed numerous key documents, including the purported original promissory notes, other terms and conditions paperwork, key correspondence, documents evidencing payment, and much more.

---

[1] "Opposition Parties" includes all those parties in opposition to me, including plaintiff U.S. (including ED), ECMC, the Great Lakes entities, and various parties that have been served but have not even appeared yet, such as Goldsmith & Hull.

The Opposition Parties argue that my factual claims are speculative.  That is not true.  Among the **many** facts which are **objective** and **uncontradicted** (and often dispositive of my claims, defenses, and relief requested)[2] are that:

1. The Opposition Parties[3] inexplicably and unlawfully added $148.81 to the debt in late 1998 or early 1999.[4]  CR 89-1 ¶¶27-31, Exhs 7 and 8; CR 35 at ¶¶43-47;[5] CR 78 at 23.[6]

2. The Opposition Parties refused to correct this $148.81 error or provide documentation to properly address it (and my many other various concerns).

---

[2] Each of which is supported by my declarations under penalty of perjury and corroborated by my documents and documents produced by the Opposition Parties in discovery.  Citations/references are a sampling only; the entire record below is relied upon.  Moreover, if this Court needs additional citations/authority/evidence for any position (factual or legal), please advise and I will provide more.

[3] Written notice of transfer of the debt was never provided to me, so I only know what the parties told me – which, by and large, have been representations primarily to obstruct and obfiscate.  CR 35 ¶33; CR 89-1 ¶17.  It is not clear who is responsible for this $148.81 error, but it is clear that it exists (and presents a GIMF in any event).

[4] To conserve space in these briefs, certain phrases are implied like "on or about," or "approximately," as to dates and figures, and "including without limitation" as to itemizations; I preserved such things throughout the record below.

[5] Payco had an interest amount of $256.75 through 12-16-98, while ECMC had an interest amount of $878.96 through 3-16-99 (90 additional days).  The additional interest accrued should have been $473.40 ([$5.26 * 90]).  Thus, the total interest as of 3-16-99 should have been $256.75 + $473.40 = $730.15.  ECMC's $878.96 is obviously an overcharge of $148.81 ($878.96 - $730.15 = $148.81).

[6] "CR" refers to the Clerk's Docket and is cited by docket entry number. Any pinpoint cite denoted with "¶" indicates the paragraph number therewith. Any pinpoint without "¶"denotes the page number as recorded by the CM/ECF filing system (and not necessarily the page number used in the document by the filer); thus, for example, "CR 78 at 23" denotes my opposition to ECMC's motion to dismiss filed on 2/13/2012 at page 23 of 25 (which is page 17 of my memo).

*Id*. <u>To this day</u>, this and many other errors are *part and parcel* of the amount demanded by and improperly awarded to plaintiff U.S. by judgment below.

3. The Opposition Parties refused to allow me to pay-off or consolidate:

   a. For *any* amount during my bankruptcy. CR 89-1 ¶¶16.c., 14-31, 43.

   b. For *any* amount *months after* my bankruptcy.  CR 89-1 ¶¶32-41.

   c. And for the proper amount at **all** times thereafter.  CR 89-1 ¶¶42, 47.

   d. Indeed, ECMC's records indicate that it immediately implemented an undisclosed blanket policy against me:  ECMC[7] would provide "no further response" to me about anything.  CR 89-1 ¶43 and Exh 10.

   e. ECMC and Ford refused to allow me to consolidate with Ford unless ECMC – in its sole discretion – completed and sent back the LVC form to Ford, which ECMC <u>refused to do</u> until at least October 1999, and <u>never certified the correct amount legally owed</u>.  CR 89-1.  I have repeatedly requested but never obtained a copy of any LVC (even any of partially completed LVC forms ED allegedly sent to ECMC):

      i. Not in 1999 or 2000.  CR 89-1 ¶16.c.

     ii. Not at any time thereafter.  CR 89-1 ¶¶40-41.

    iii. Not in response to my several 2011-2012 FOIA and Privacy Act requests.  CR 89-1 ¶¶3.b., 5.h-j.; CR 136-1 ¶¶8-9; CR 63-1 ¶2.e.; CR 35 ¶¶68, 151.

    iv. Not in discovery in this litigation – not even after repeated motions to compel.  CR 128 at 5 (denying production of LVCs

---

[7] Plaintiff U.S. claims GLHEC assigned the debt to ED.  CR 52 at 4:15-19.  Canlas declaration appears to say that the debt was assigned twice.  CR 52-1 ¶¶8-9.  If ECMC was merely servicing the debt for ED (rather than Great Lakes transferring ownership to ECMC), then everything Ms. Scaniffe told me becomes all the more relevant and creates additional GIMF because the Opposition Parties represented to me in 1999 that <u>ECMC owned</u> the debt and that <u>ED was impartial/independent</u>.

requested in Doc.Req.No.9 to both ECMC and Great Lakes; see original subpoenas at CR 112-3 Exhs 5 and 6); CR 136 at 25; CR 112-1, -2; CR 39, CR 55, CR 63-1 ¶2.e.; CR 120 p.12.

4. The "transactions statement" submitted in support of plaintiff U.S.'s MSJ (CR 118-2 pp.7-51, stamped "ED00240 - ED00284"):

   a. Covers only 2007 back to 1999 when ECMC obtained the debt; it does not include any payments made during the decade before, commencing in 1988.  The principal amount is clearly wrong; the interest amount is clearly wrong; not all payments are applied; the total amount due is clearly wrong; and none of it is supported by a full accounting.

   b. Is illegible at the top of pages ED00240 and ED00258. CR 118-2 at pp.7 and 25 (same condition as produced in discovery).

   c. Is clearly inaccurate and incomplete.  CR 129-1.

5. The declarations of the government's sole witness, Canlas, make clear that:

   a. The DOJ and ED made no attempt to produce all key documents, including the LVCs and correspondence – not even all the correspondence between the Opposition Parties and myself.  CR 131 at 5-6 at ¶¶6-7 (document search entailed only Canlas printing NSDLS & DMCS documents, and Canlas purportedly hearing from Ms. Burton that she requested documents from HP Enterprise Services, ECMC[8], other ED records including those maintained by Xerox, but which *limited her request to copies of emails stored on* Ms. Scaniffe's computer – that is, there is no dispute that <u>no one ever</u>

---

[8] The documents produced by ECMC are not identical to those produced by plaintiff U.S. with the prefix ECMC (or any other prefix), demonstrating again that plaintiff U.S. had failed to produce all documents.

<u>contacted Ms. Scaniffe to obtain all correspondence and documents</u>).
CR 136 at 21.

b. Canlas is not the custodian of records.  CR 131 per order CR 128 at 3
(order required a "custodian-of-records declaration").

c. Even though the documents produced in discovery and filed with the
court make clear that such documents exist or existed.

d. The contents of any documents purportedly lost raise important
factual and legal issues which cannot be determined on motions to
dismiss or for summary judgment (cite to JMG Decls).

e. Canlas has a pattern and practice of overstating the government's case
in student loan litigation.  See, e.g., *U.S. v. Gray* cited in my opening
brief at page 38.

6.  I was denied my due process rights as to Rubio Canlas' declarations:

a. I was denied the right to examine Rubio Canlas.  CR 137; see also
CR 106; CR 127; CR 134.

b. My motions to compel production of the "records and databases of
records" relied upon by Canlas in his conclusions against me was
denied.  CR 128 at 2-4; CR 112-2 Exh 1 at 7 at RFA Nos. 4 and 5 and
Exh 3 at 26 at RFP Nos. 6-9; CR 52-1.

c. My hearing on my motion to compel was denied -- even though the
court requested and obtained another Canlas declaration which it
relied upon to deny production of key documents (and I was denied
the right to oppose or be heard on regarding such declaration).
CR 128 at 3; CR 131; CR 135; CR 136; CR 138.

d. My many objections to Canlas' declarations were denied.  CR 89-2;
CR 129-1.

I.    <u>**No full, complete and accurate accounting has been produced**</u>.

The judgment includes the $148.81 in interest that ECMC inexplicably and unlawfully added.[9]  The Opposition Parties' full accounting (yet to be disclosed) would corroborate my declarations and CR 89-1 Exhs 7 and 8.  Since ECMC refused to correct this error in March 1999 <u>and ever since and to this day</u>, my claims of fraud and obstruction are ongoing and not time barred.  ECMC has at all times through to the present denied me my right to pay-off and/or consolidate the amount legally due.

II.    <u>**When there is a legal wrong there is a legal remedy – obvious financial fraud should not be ignored and a judgment based on obviously flawed evidence is improper**</u>.

The Opposition Parties constantly rely on multiple "Catch-22"s or circular reasoning to defeat my claims and defenses procedurally.  Reviewing them all together it becomes clear that each of the rulings/judgments challenged are flawed and must be reversed.

The date of a particular fact does not determine when the SOL begins to run; instead, accrual of a claim begins to run "when the cause of action is complete <u>with all of its elements</u>." *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397; CR 79 and 80 each under Section IV.D., at 17:1-19:6 and 16:25-19:3, respectively.  Elements of each claim were missing, most notably:

---

[9] However, this is not just a matter of subtracting $148.81 from the judgment because (1) it was ECMC's purposeful refusal to correct this error (and submit an accurate and timely LVC to Ford) that prevented me from paying off and/or consolidating the debt during or immediately after my bankruptcy (and before it assessed $5,000 in purported "collection" charges), (2) had I been allowed to pay-off or consolidate ECMC would not have been paid 10-plus years in additional interest by the government and thus the judgment below inflated by more than $25,000 plus collection fees, (3) had the Opposition Parties not relentlessly obstructed me for the past 14 years none of this protracted litigation would have had to occurred.

a. Breach: ECMC's March 16, 1999 letter with a clearly erroneous interest amount does not, by itself, give rise to a legal claim. Indeed, there was no finding below that this error must be corrected; instead the Opposition Parties and the Court simply ignored it. If such correspondence alone could create a cause of action, the federal court's ripeness doctrine would be substantially degraded. The Court below held that I had a "duty to investigate," but what was I to do: burglarize ECMC and Great Lakes?

b. Harm: ECMC's $148.81 error did not harm me until the Opposition Parties attempted to collect more than what was due, which is only recently (any more than a spam letter harms me until the sender tries to actually collect on the fraudulent claim).

c. Clear contract terms: Full copies of the contracts were not produced in 1999 nor have they been produced to this day. CACI 302.

Even a cross-complaint for indemnity does not accrue at time of the incident, but instead accrues at the time a judgment or settlement is paid. *FNB Mortg. Corp. v. Pacific General Group* (1999) 76 Cal.App.4th 1116, 1127-1128.

I have carried my burden of showing that there was an error of $148.81 between December 16, 1998 and March 16, 1999. Since the Opposition Parties have not shown that such error either did not exist, or was correct, or was corrected, the error remains part and parcel of the the judgments in favor of the Opposition Parties. Any cause of action I had in 1999/2000 was not ripe because it lacked all the elements, including sufficient evidence to file suit and a recognizable harm since the Opposition Parties did not start to take more than was legally due until more than a decade later. Indeed, the Opposition Parties claim my FATPC, based on the evidence I had before discovery in this case, is not sufficient. Now that there is more evidence the FATPC is better supported – including by many documents produced after dismissal.

**A.     The rulings below are clearly unjust because:**

1. By not correcting $148.81 error, that over-charge remains part and parcel of the purported debt (it is necessarily "embedded" within it).

   a. No one in the student loan industry provides alleged debtors with monthly, quarterly, or annual accountings – debtors are just told what they owe and that's it:  pay it or we garnish wages and take tax refunds without prior notice, notice after the fact, and/or any hearing or other mode of due process.

   b. No one in the student loan industry discloses to alleged debtors the fees charged, and when fees will be or have been charged -- nor do they disclose the statutory/regulatory authority for such assessments.

   c. Without a mechanism requiring debt holders to disclose documents and/or accountings, it is next to impossible for a debtor to evaluate whether the demands might be accurate or inaccurate.

   d. Because the interest rates are above-market and the fees are so high and the oversight abysmal or nonexistent, guarantors have an incentive not to collect.  Guarantors are incentivized to obstruct in every way possible including making alleged debtors believe the demand is in error thus assuring that anyone with some backbone will refuse to pay.  This keeps the "goose that lays the golden eggs" alive for more interest and more fees.  That is, there is an inherent conflict of interest in being both the guarantor (who knows it will collect regardless of what happens) with the collection side.  Under this system, guarantors do not want debtors to pay-off loans – they want such debts to remain alive as long as possible.

2. Plus the Opposition Parties assessed interest and fees on that $148.81 error.

3. But reversing that $148.81 error and all interest and fees assessed on it would not correct the problem, because had that error been corrected back in 1999, I would have paid off the debt and there would have been no interest at all since 1999 (or much less interest depending on how I paid it off).

   a. The refusal to correct the error necessarily means that the Opposition Parties did not admit the error – indeed, to this date they refuse to even address the issue – so how did any claim accrue? What was I to do, break into their offices and obtain the accounting (the evidence)? Where was I to bring my claim? I asked ECMC for a hearing, I wrote to the Opposition Parties, the trustee and filed an ex parte in my bankruptcy case – and all I got was the same incessant roadblocks that whatever they say you owe is what you owe and there's no way to challenge it.

4. But even reversing the overcharge and all interest and fees thereon and all interest charged on the remainder due does not correct the problem because it is now clear that the principal amounts are not trustworthy because:

   a. The original loan documents have been destroyed and the photocopies produced are unreliable and/or suspect;

   b. Additionally, plaintiff U.S. never did produce any of the original terms and conditions pages;

   c. Moreover, the incomplete terms and conditions pages that Great Lakes alleges it produced were not and are not in evidence in any event – had they been, additional arguments about the viability of the debt and the purported balance could and would have been raised (moreover, the Court refused to allow me to inspect any of the Opposition Parties' electronic or original copies);

d.  Document copies can easily be manipulated, changed and are inherently unreliable – and particularly so here.

i.  Such unreliability is not speculation because some signatures do not appear to be mine (e.g., one purported application has a backwards looping "J" and another appears to be a traced and retraced signature);

ii.  Anyone can easily "cut & paste" anyone's signature on a copy, manipulate amounts, manipulate dates, or anything else on the copy (which again is why the Opposition Parties' purposeful destruction of the originals is so inexcusable);

iii.  Some purported application pages were not completed by or signed by the alleged lender (and thus obviously never became loans, but remain merely purported applications at best); and

iv.  Some purported application pages have no interest rate (and without the terms and conditions it is difficult to tell what interest rate might be reasonable to apply now).

5.  There is also a duty to have sufficient evidence before filing a suit.  What cause of action was ripe and when?

6.  Since I did not know that Great Lakes had purposefully destroyed the alleged original applications and so much evidence, a cause of action for spoliation did not arise until March/April 2012 at the earliest when Great Lakes produced additional new documents and admitted that all other documents had been destroyed.  And the Opposition Parties' defense that they cannot be held responsible for such destruction because there purportedly can never be a cause of action for spoliation is based on the rationale that there are other remedies – none of which are present here and certainly none of which were used to provide any relief.

7. While each issue stands alone, many are also inextricably intertwined. The Opposition Parties are akin to three bullies on the playground tossing a victims ball back and forth out of reach from the victim and often behind his back so he does not even know what is happening. Although the allegations involve several loans and several entities, it is but one dispute – upon a student loan debt. Each Opposition Party has certain arguments for when it was or was no longer involved in the conspiracy, whether the law allows them to commit these wrongdoings with immunity, and so forth. But the facts remain that but for (1) their obstruction, (2) their accounting errors, (3) their continued concealment of and purposeful destruction of evidence, and (4) arrogance in ignoring me from the very beginning, the dispute as to the legal amount owed could and would have been resolved.

**B.      The Court below ignored my declarations, objections & evidence.**

The court below concluded that Gorski "does not appear to dispute that he defaulted on his loans or that the unpaid principal balance on the loans, at least in early 1999, totaled approximately $24,000." CR 143 at 3. Nonsense and there is no evidence to support either finding. Great Lakes told me the debt had not been in default prior to bankruptcy and I clearly was never in default thereafter because Great Lakes and ECMC breached their duties during my bankruptcy and forever thereafter and I was excused from performance having done all I could to consolidate or payoff the correct amount in 1999 and 2000. Moreover, I clearly never agreed that such debt accurately "totaled approximately $24,000" and no competent evidence was submitted to conclude that – quite the opposite. Great Lakes and ECMC refused to validate the debt or to certify the debt for consolidation and all the Opposition Parties refused to copy me on their communications between one another – including ED's purportedly sending ECMC a partially completed LVC several times.

Because the Opposition Parties recently began to intercept IRS tax refunds and attempt wage garnishment, my claims do not simply amount to a defense, but affirmative causes of action.

Besides student loans, other types of debts are also not dischargeable in bankruptcy; consider analogous circumstances as presented in the instant case:

1. A vindictive spouse wrongfully refused to accept domestic support payments and then sent a letter alleging that an inflated amount was due (by adding on principal, interest and fees not owed). Can the vindictive spouse come into court many years later to enforce payment based on that fraudulent letter and defeat any counterclaims of obstruction/breach/accounting by alleging that the statute of limitations accrued on the date of the debtor spouse's receipt of the letter? (No, because the debtor spouse does not have to sue to force the ex-spouse to accept payment. Nor does a person have to run into court every time one receives a bogus email or other fraudulent correspondence – not even if the letter is from a person holding a non-dischargeable claim, like a vindictive ex-spouse. Imagine if one did have a duty to run to court with every erroneous letter – the federal courts would be inundated.)

2. A bitter personal injury claimant wins a judgment against the debtor who injured him in a DUI accident. The debtor tenders full payment, but the claimant refuses to accept it. Not knowing what to do, the debtor communicates with the PI claimant for over a year requesting over and over that he accept the correct payment without resolution. The bitter PI claimant sends off his own letter falsely claiming more is due but refusing to address the salient issue of his refusal to accept payment. The PI claimant renews the judgment just before the ten-year mark, sells it to his buddy, who then proceeds to court. Is the fact that the bitter PI claimant refused payment more than ten years prior relevant? Must the debtor not only pay the judgment, but also the clearly erroneous interest and fees assessed within the first year plus more than a decade of additional above market interest (usually 8 or 10%) on the amount? The counterclaim for erroneous accounting and the PI claimant's fraud are time barred? (No. Again, it is not up to the debtor to do anything other than tender payment. Here, the debtor did more than tender payment – he begged, he pleaded, he contacted the government and all sorts of people <u>to no avail</u>.)

3. For either example above, now also suppose that the creditor had the ability to garnish wages and intercept tax refunds without notice and without a hearing or any due process. Suppose that the debt was a federal matter so that no action could be filed in state court and that the federal courts have ruled that numerous statutes do not apply – not the UCL, not FDCPA, not the Admin Act and that a plaintiff otherwise had to have a claim of at least $50,000 or $75,000 to file in federal court. Suppose the creditor had a special Act that virtually immunized him from any counterclaim: the "Higher Ex-Spouse Act" or the "Higher Expenses Act" and that H.E.A. nowhere specifically prohibited the type of fraud set forth – is there really no counterclaim, no remedy at all? The debtor was *required* to sue or waive the counterclaim? And on top of that, the bogus demand is upheld because the debtor did not sue for some cause of action based on the letter? And what would be that cause of action: wrongful letter? (No. I never waived my claims in any way. I begged and pleaded with ECMC but instead they refused to contact me ever again.)

4. Now further suppose that the debt was sold to the government. Does governmental immunity somehow bar some of the rightful claims stemming from the wrongful conduct of the vindictive ex-spouse and bitter PI claimant? (No, some buddy of selling a false claim to the government is a violation of the False Claims Act.)

5. Still further, suppose the vindictive ex-spouse or bitter PI claimant is buddies with everyone in the courts. Any problem in denying the clearly wronged debtor any relief? Screw the debtor? Who cares if the fraud results in his paying more than twice what he tendered so many years ago?

6. On top of that yet, suppose the creditor no longer has a copy of critical documents relied upon – suppose the copies evidence signatures which the debtor honestly does not recognize as his own (backwards looping "J" and obviously traced signature), not signed by the lenders, no interest rate, no terms and conditions pages – all to such an extent that not even the amount the debtor tendered so many years ago is properly supported.

7. Still further yet, suppose the debtor was in bankruptcy when the dispute arose and filed an ex parte in his bankruptcy to have an adversary proceeding to resolve the dispute but the bankruptcy court summarily dismissed the ex parte application and closed the case. Was the debtor required to come up with the money to file to reopen the case and beg and

beg and beg for some proper relief?  Would a case for fraud at that point even be ripe?  Was there sufficient evidence for any particular claim simply because the creditor had an erroneous demand?  Do the newly produced telephone records clearly indicating the creditor "round-filed" all of debtor's letters have any bearing?  (After my ex parte was denied I talked with the clerk for my bankruptcy case to explain that I was seeking relief for the correct amount due, but to no avail.  My case was closed in a matter of days.  I was told there was no action for relief and all my research confirmed this: the courts do not want to hear from debtors, ECMC can do whatever it wants.)

8.  In essence, the question is simply:  How wide a sea must the debtor swim?  How high is the mountain the debtor must climb?  How nonsensical is it that a debtor -- with evidence backwards and forwards that the creditor refused payoff, demanded an inflated amount, ignored his correspondence and pleas to resolve the dispute professionally -- is denied any and all relief?  And then to learn that the creditor could not then and cannot now even properly support the amount the debtor tendered?  (It is the claims against me that ought to be dismissed.  But a jury needs to hear this – the courts cannot keep ignoring the victims of this elaborate scam.)

9.  Perhaps placing the debtor's full SSN and other private information in the record will "teach him a lesson."  This too, was not just done to me multiple times below but in fact is routinely done.  [Cite.]  And the victims of this unethical harassment are all putative class members on the claims and each of them have a right to have their PII removed from the court records and other reasonable relief.

## III.  **Great Lakes' Answering Brief.**

Great Lakes' role was not minimal; Great Lakes' responsibility did not end on March 16, 1999.  Great Lakes (1) conspired with the other Opposition Parties (and thus is responsible for the actions/inactions of the other Opposition Parties), (2) negligently transferred its rights to ECMC, (3) conspired to deny me a fresh start during my bankruptcy, (4) made representations to me that the other Opposition Parties disputed and for which the truth has yet to be revealed, (5) has not been absolved of responsibility for accounting errors, (6) produced documents

by subpoena on or about March 30, 2012 which had not been previously produced demonstrating again that my motions to compel document production from plaintiff U.S. were appropriate, and (7) numerous documents that Great Lakes should have retained have not been produced, supporting for the first time my claim of spoliation against Great Lakes.

Great Lakes relies on my FATPC for proof that its "involvement with Gorski began and ended within a matter of weeks in early 1999." (GLat6.) First, this is blatantly false. Great Lakes' involvement did not begin in 1999; Great Lakes accepted many of my payments over many years prior to and including 1999. Similarly, Great Lakes' involvement and responsibility did not magically end "within a matter of weeks in early 1999." Great Lakes wrongfully transferred the debt to ECMC. I informed Great Lakes that ECMC refused payoff and would not provide documents. Great Lakes knew ECMC had the wrong amount. And yet Great Lakes ignored my pleas for help too. No one can do that: sell a contract to someone who breaches it and then refuse to address the wrongdoing. A tenant cannot just transfer his lease to someone who breaches it and then deny any responsibility. Someone cannot just give their car to a clearly intoxicated driver and then deny responsibility for what happens next – particularly when some yells "hey, he's acting drunk!"

Second, pleadings are not designed to set forth every last fact, but only to sufficiently support a cause of action (only fraud must be set forth in particularity – and even then only sufficient particularity to state the claim; there is no requirement to list every act and every date).

Third, the Court dismissed the FATPC without providing leave to amend. Among other things, Great Lakes was part of the conspiracy and thus shares in the responsibility of the wrongful actions of the other co-conspirators.

16

Fourth, there is no evidence yet of <u>when</u> Great Lakes destroyed documents. We only know that it had possession of a slew of documents spanning more than a decade and that many of those some documents have been destroyed. No cover letter transferring the debt from Great Lakes to ECMC was produced.

Fifth, I was not aware of this apparent destruction until March 2012. My third party complaint was dismissed before any discovery could take place. Dismissing Great Lakes would be like dismissing my ego because my id was still a party. The Opposition Parties acted in unison and distributing the wrongdoing among them should not be used as a shield to ignore one conspirator's role. We do not even know if the $148.81 error belongs more to Great Lakes than ECMC – only that it obviously presents a one of many GIMF to the claim that I owe the balance demanded and erroneously awarded.

Likewise Great Lakes claim that "it is undisputed that Great Lakes no longer owned or serviced the loans as of March 1999" is not true. (GLat7.) I was not provided written notice of any transfer. I was not provided proof that the debt was legally transferred. Great Lakes made the claim that the debt was transferred when I called Great Lakes. That does not make it "undisputed" – concealment and fabrication just makes it difficult for one without personal knowledge to know who did what and when. The Opposition Parties' claims as to what happened are self-serving and have been shown to be unreliable. There is no reason to automatically believe it. Similarly, I do not believe it is true that I "never spoke or communicated with anybody from Great Lakes after March 16, 1999" (GL at 7-8) and I find nothing in the record where I state that.

My claims are not at all limited to "failure to respond and/or produce documents [in 1999/2000]." (GLat8) Among other things, ECMC provided a false claim to the government (violation of False Claims Act, although ECMC's written claim has still has not been produced in discovery); the Opposition Parties

17

have delayed the production of, withheld, and destroyed key documents (during and/or relevant to this litigation); they continue to conceal and misrepresent material facts; they continue to fail and refuse to produce a full and proper accounting; they continue to fail and refuse to account for all voluntary payments made to Great Lakes and all involuntary payments made to ECMC.

Indeed, Great Lakes admits that there are clearly unresolved issues, such as when the debt was sold to ECMC.  (GLat8, fn2.)  Great Lakes falsely claims that is "actually produced all of the responsive documents, even including the backs of Gorski's promissory notes."  (GLat10.)  First, there is no evidence of that in the record.  Second, Great Lakes never produced any documents – it only provided copies; I was denied my right to inspect and, as I told the court below, I believe some of those documents are fraudulent.  Third, the fact that both Great Lakes and ECMC produced new documents in March/April 2012 that had not yet produced by the U.S. proves again that the U.S. failed abysmally to give a good faith effort to produce all records in its possession, custody or control (despite several prior motions to compel).  Fourth, such late production supports my claims that the Opposition Parties have concealed critical documents and again supports my claim that I should have been afforded the opportunity to amend my FATPC.

Great Lakes falsely represents that "Gorski fails to plead a duty to disclose by Great Lakes."  (GLat12.)  Such duty is alleged at least twice in FATPC.  See, e.g.,  CR 35 at ¶2 at 3:17-19 and at ¶90.  What creditor who earnestly wants to collect refuses to provide access to the documents supporting the claim (particularly when the debtor honestly and repeatedly disputes the amount)?  Answer:  a creditor who (1) is unregulated by the FDCPA, (2) knows his actions/inactions are not properly regulated by anyone, (3) knows that the government will ultimately pick up the tab, and (4) expects the fraudulently

inflated claim will never see the light of day – i.e., a guarantor in the U.S.'s student loan industry.

 I was precluded from any legal or administrative remedy for ECMC's wrongful actions, including without limitation, because:

a. My bankruptcy judge denied my ex parte application to have the matter heard in an adversary proceeding.  I contacted his clerk to make clear that I was not trying to discharge the debt but only to resolve the amount purportedly due and was told my bankruptcy judge would not entertain any such litigation.  Instead he immediately closed my case.

b. Thus, I continued to try to work it out with ECMC and even contacted Great Lakes, the trustee, and numerous other people for assistance but to no avail.  Indeed, ECMC promised a hearing that ECMC would oversee and rule upon but then refused to provide one.  ECMC told me eventually told me that the CLRA did not apply and that no law required them to do anything, which I did not believe at first.

c. In researching the matter I found:

 a. That state courts have no jurisdiction on student loan debts guaranteed by the federal government in the Ninth Circuit (because the federal scheme totally occupies the guaranteed student loan field).  *Brannan v. United Student Aid Funds*, 94 F.3d 1260 (9th Cir. 1996).  Thus, neither California's Rosenthal Fair Debt Collection Practices Act nor its Consumer Legal Remedies Act apply (I obviously thought the CLRA applied when I mailed CR 89-1, Exh. 6).

 b. That the obligation was not large enough to invoke federal diversity jurisdiction in district court because the amount in controversy was less than $50,000; thus, I could not invoke federal diversity jurisdiction.  28 U.S.C. 1332(a).

 c. In seeking some federal statute to sue under I found no federal act that applied.  For instance, in the Ninth Circuit neither the Fair Debt Collections Practices Act nor the Administrative Procedure Act apply to guarantors.  *Spokane Cty. Legal Serv. v: Legal Serv. Corp*., 614 F.2d 662, 669 (9th Cir. 1980); *Schultz v. SEC*, 614 F.2d 561, 569 (7th

Cir. 1980); *Student Loan Ins. Fund of Idaho, Inc. v. Riley*, 272 F.3d 1155 (9th Cir. 2001), cert. denied, 123 S.Ct. 411 (2002).

   d.   Thus, I came to believe that ECMC was correct:  I had no court or agency to go to for a hearing of any kind.

d.   Thus, I turned to ED's general counsel for assistance (believing it to be an independent agency that had some sort of "informal compliance procedures" which could properly resolve the dispute).  Indeed, as late as 2010, the Ninth Circuit thought that is how such issues were resolved as well.  *Chae v. SLM Corp.*, 593 F.3d 936, 943, fn.6 (2010).  ED's General Counsel, Ms. Dawn Scaniffe, initially seemed to show interest in assisting, but after a few months would not assist me (such that my only apparent recourse was to pay whatever amount ECMC demanded).  She sent my case to the newly created Ombudsman's Office, which concluded the matter was closed and refused to help.

e.   With no apparent affirmative remedy available I believed that basic due process would afford me right to a hearing before any action was taken against me (be it for a civil judgment, garnishment or interception of federal income tax refund).  Thus I believed that while I could not bring a state or federal action or any administrative hearing that I could and would be heard when ECMC ever tried to collect on its erroneous claims.  But to date, I have never been afforded the right to challenge this in any way.  Every judge just automatically sides with the Opposition Parties as if there never was due process in this country.  Every action taken to collect has been done without notice and without any semblance of due process.  It's Kafkaesque to say the least.

f.   Lastly, given all these circumstance and my vigilance in trying to get ECMC to correct its erroneous demand and accounting, I believe this Court must conclude that basic due process prohibits the Opposition Parties from delaying correcting errors indefinitely thus "denying a litigant its day in court, while the statute of limitations runs."  *Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561, 587 (1989).  In *Coit* the court held that procedures which allowed indefinite delay thereby concomitantly denying those aggrieved their day in court (while the statute of limitations runs) were inadequate.  Indeed, such procedures incentivize delay and are used to coerce debtors into unfair settlements – precisely two

of the harms the *Coit* court recognized would result. ECMC routinely uses such tactics to force debtors to agree to whatever they demand.

Great Lakes falsely claims that the FATPC "fails to even allege a contract with Great Lakes." (GLat13.) In fact, the FATPC (1) alleges breach of contract; (2) that ECMC's John Gargaro refused to provide any documents, including contracts, stating that it would take "days" to photocopy; (3) that the law firm initially representing plaintiff U.S. refused to provide copies of the alleged contracts prior to filing suit; (4) incorporates all evidence and documents; and (5) cites and is based upon plaintiff U.S.'s complaint to which various purported application pages are attached which it appears to maintain each became a valid student loan contract. CR 35 at ¶¶117-123, 71, 81, 32 and 82, and 1. Plaintiff U.S.'s purported application pages (exhibits 1-7 to the complaint at CR 73-1 at 4-17) each have Great Lakes' name at the top. But now on appeal Great Lakes is representing to this Court "there is no contract with Great Lakes." (GLat14.) This does not mean that Great Lakes should be dismissed, but rather that Great Lakes is apparently admitting that someone has used its name to create allege bogus contracts. Far from being dismissed, Great Lakes should pay every dollar I tendered to them for the ten-plus years prior to my bankruptcy.

Moreover, the fact that I most certainly dispute that any of these are proper evidence of a contract does not mean that Great Lakes was properly dismissed, but quite the opposite: there are GIMF not only on plaintiff U.S.'s complaint but upon my FATPC too (which GIMF should be decided by a jury whether or not I am required to amend my FATPC to provide even more details in what is already a 38-page complaint about some relatively simple issues). Lastly, Great Lakes' representation that "there is no contract with Great Lakes" should be seen for what is: this schizophrenic logic that the Opposition Parties indulge in as not something that I must explain but rather as clear evidence of the continuing conspiracy

between them – three bullies in the school yard tossing a much younger kid's property back and forth and behind his back and beating him up for my lunch money.

Great Lakes' argument that every claim against Great Lakes must have accrued on March 9, 1999 makes no sense. (GLat15)  What claim did I have every element of in order to assert a ripe cause of action?  Spoliation is not based on refusal to provide documents – it is based on destruction.  Destruction which was not admitted to until March/April 2012.

Great Lakes argues that my arguments of accrual and not having a ripe claim until I had every element of each cause of action including harm "actually only demonstrate that he has no claims at all."  That makes no sense.  The fact that I do not dispute that there was a correct amount owed on a student loan debt does not mean I was first harmed in 1999.  I was harmed when an amount over what was legally owed was taken – and harmed anew each time thereafter.  That hardly proves my claims are only defenses.  By Great Lakes' logic if I agreed to automatic payments of $100 per month for X years I would have no claim against a creditor who continued to take payments past X years (but only defenses to the debt that had obviously been paid off at year X).

Great Lakes falsely claims that I allege that in September 1999, the United States "took steps to offset his income tax refund with his student loan." (GLat19.)  FATPC states no such thing and no such fact is in evidence.  CR 35 at ¶52 alleging receipt of an ECMC letter in September 1999; see also CR 89-1, Exh. 9.  I asserted the rights set forth in that letter, but ECMC denied me each of those rights and ED (general counsel and Ombudsman's Office) refused to enforce those rights.  CR 35 at ¶¶52-54.  So is Great Lakes' interpretation of CR 35 at ¶52 that "ECMC is the United States"?  Or is such interpretation an admission of conspiracy?

Great Lakes then goes on again to distract this Court with the notion that I claim there is a cause of action solely because "Great Lakes allegedly had refused to produce documents Gorski was damaged thereby." (GLat19.) I do not think I have, in the many hundreds of pages I have been forced to file in this case, ever taken such a position -- and Great Lakes cites none. Even if I have, the fact that that one fact of some of my claims dates back to 1999 does not mean the entire FATPC is time barred. Many cases involve relevant facts that date back before accrual of claims. Indeed, while a breach of written contract not involving a student loan must be brought within four years that does not mean that contracts older than four years are never enforceable. How could our justice and economic system even work if that were true?

Great Lakes argues that because its name is referenced in my opening brief only seven times after page 7 and those references all fail to allege "additional" wrongdoing that all claims against Great Lakes accrued in 1999. (GLat20.) First, Great Lakes is one of the Opposition Parties, so Great Lakes is referred to more than just seven times after page 7. Second, it is undisputed that I first became aware that Great Lakes destroyed documents no earlier than March 30, 2012 when it produced copies of the only documents it had left (along with several that I believe are fraudulent). See my CA9 Dckt 5 at 18 (which does not mention Great Lakes by name but includes it). Third, Great Lakes is a co-conspirator. Fourth, my claims did not accrue and were not ripe until many years after 1999.

As to the discovery Great Lakes argues that I had a duty to "go find the facts." (GLat20 berating my argument at CA9 Dckt 5 at 28.) Since ED, ECMC and Great Lakes were the only places to investigate, how was I to "go find the facts"? None of the Opposition Parties or court below answer the question posed "Should I have broken into their offices to obtain the documents on this debt?" If not, how do they expect me to fulfill my duty "to find the facts"? These were facts

solely in the possession of the Opposition Parties and they have conspired to conceal them from me – *through to this day* for many missing documents, including the alleged LVCs, correspondence, accountings, and the "Statement of Borrower's Rights And Responsibilities."

> Great Lakes takes pride in the fact that it concealed information from me:

> He may not have known all of the *supposed* facts, but by his own claim, he knew he was being "stonewalled" at the time. It was his duty to investigate further [even if the only ones with the information were stonewalling], but [regardless of that stonewalling] the statute started to run as soon as he was aware that *Great Lakes supposedly refused to provide information*.

(GLat21, italics added.) It reads as if there was no trial or discovery determining all these various relevant facts. And the logic makes no sense:

1. Victim does not know all facts to bring a claim.
2. Suspicion requires him to find those facts.
3. He alleges he could not obtain those facts because the only three with the information (responding Opposition Parties herein) stonewalled.
4. Regardless of stonewalling/concealment and not having <u>any chance</u> of obtaining the facts to bring the claim, the statute started to run.

Under this reasoning, Great Lakes is incentivized to conceal its wrongdoing because the statute starts to run *as soon as someone complains* and if all the conspirators <u>continue the concealment passed the deadline</u>, Great Lakes can never be held responsible for its wrongdoing. Thankfully, that is not the law. CR 79 at 17-19 under Section IV.D. citing *Norgart*; Witkin; *Soliman*; *Menatos*; Corman. Unlike in *389 Orange*, I have alleged fraudulent concealment from the beginning. CR 35 at ¶¶85-95.

The purpose of 20 U.S.C. § 1091a is "ensure that obligations to repay loans" are "enforced without regard to any [statute of] limitation. (GLat21, quoting 1091a.) Section 1091a does <u>not</u> seek to assist fraudulent concealers <u>nor</u> does it

24

seek to remove the statute of limitations on a guarantor's fraudulent claims. Were my claims unrelated to student loans, Great Lakes might have a point; but my claims do not conflict with the intent of Section 1091a. Rather, my claims are the same: enforcement of obligations to repay loans – the Opposition Parties' obligations to accept repayment when its repeatedly offered. It is the Opposition Parties who actively, purposefully, and with intent to profit, *refused to accept repayment*. I have been and continue to be the only party in this litigation trying to ensure that obligations to repay loans are enforced. To distort that into the notion that companies in the student loan industry are immune from claims of financial fraud so long as they wait out the statute of limitations is a misreading of the text and intent of Section 1091a.[10]

As to the $148.81 interest overcharge Great Lakes represents that Gorski "has not paid anyway." Thus, given that it has not been involuntarily paid yet, how are my claims time barred? Because the Opposition Parties have stonewalled in discovery Great Lakes gloats "any such claim was as 'ripe' in 1999 as it is today." (GLat22.) Rather than supporting the argument that all the orders below are proper, this argument highlights why all the orders appealed from are flawed: the evidence shows GIMF for all my claims, but the FATPC was dismissed and judgment entered against me based on the bogus demand – despite numerous GIMF on that demand. All documents about the alleged debt must be produced so that the jury will have enough information to see the truth.

---

[10] A statute of limitations is regarded in most states, including California, as a vested right and that the Legislature cannot remove the bar and destroy the defense by a retroactive law. 7 Witkin, Summary 10th (2005) Const Law, § 632, pp. 1030-1031 (citing *Chambers v. Gallagher* (1918) 177 Cal. 704, 708, but also noting that the USSC has taken the contrary position, holding that the statute of limitations ordinarily relates to remedies rather than rights). Moreover, *389 Orange* does not state that cross-claims are subject to a shorter SOL and *Hurst* indicates Section 1091a removed SOL as to cross-claims.

Great Lakes argues that because state laws are preempted, there is no common law that applies nor does HEA prohibit financial fraud by guarantors. (GLat22.)  Not true.  Moreover, even if some un-cited provision of HEA did preempt common law fraud, such provision would be unconstitutional.

Great Lakes cites *Steckman* to encourage this Court to affirm based on "any proper ground."  (GLat23.)  However, due process requires that I be afforded a full opportunity to address any new ground or any ground expanded upon.  The Opposition Parties cannot conceal some key argument and then with a wink and nod to the federal courts expect that such ground will be the basis to affirm to place the last nail in my coffin.  Rather, I have a right to hear and be heard upon any new or elaborated ground used to affirm.  And I welcome the opportunity to provide additional briefing on any issue the Court sees as an important ground.

Great Lakes lists five elements of a particular cause of action for fraud, but there are several types and each applicable type is addressed in my FATPC at ¶¶85-111.  Among other things, I believe the Opposition Parties misrepresented facts to one another (and probably would have to in order to get cooperation since many people at ED have no intention to be actively involved in wrongdoing and might well have assisted me had they known the true facts).  Great Lakes then gloats that "Gorski's TPC falls laughably short of pleading fraud with particularity."  (GLat24.)  Yes, I am well aware that counsel for the Opposition Parties have had many a good laugh on this case.  In one of my first conversations with Brent Whittlesey, he laughed out loud at me, and in a hearing before Judge Wu he commented that I needed a mental examination.  Great Lakes argues that I failed to plead "any false statements by Great Lakes."  (GLat24.)  Not true:  I allege that Great Lakes told me my debt was not in default prior to filing for bankruptcy and that ECMC took ownership of the debt on January 30, 1999.  CR 35 at ¶33.  The Opposition Parties each gave conflicting information on these two

issues and are not in agreement on either fact and no finding was made below as to who is right about the default or the date of transfer.  Not only are these GIMF, the contradictory stories from the only ones who have personal knowledge demonstrate that one or more of the Opposition Parties most certainly made material false statements about the debt.  Just because I did not know then (or now) who is responsible for what false statement does not mean I failed to allege it. Misrepresentations by Great Lakes and ECMC to ED (general counsel, Ford and the Ombudsman's Office) are not excused simply because I sometimes do not know precisely who said what but only that there obviously were misrepresentations to me and about this debt to ED.

Great Lakes falsely claims that I failed to "allege[] any way in which [I] justifiably relied on any statement by Great Lakes or changed [my] position as a result thereof."  (GLat24.)  It is quite clear that I had no choice but to rely on statements by the Opposition Parties and that my position of obtaining a "fresh start" was denied because of it.  In fact, I suspect that guarantors love it when a borrower believes s/he does not owe the debt and refuses to pay.  Cha-ching:  more interest and fees and there's a guaranteed payoff by the debtor or the taxpayer or both.  Nice scam, particularly so when you can convince ED, taxpayers, and the courts that all the debtors "just don't want to pay their debts."  Nothing is further from the truth.  Moreover, Great Lakes' speculation that my causes of action "cannot be fixed" and thus denial of leave to amend was proper is self-serving and false.  (GLat24.)

Great Lakes cites *Chae* for the proposition that 20 U.S.C. §1098b "expressly preempts the operation of state disclosure laws to loans made pursuant to the *Higher Education Act*" and thus I cannot assert any type of fraud claim (GLat24.) Great Lakes thus converts preemption from its purpose (of not allowing state statutes/regulations from interfering with a federal scheme) into a policy that

eviscerates every common law protection against, and every constitutional due process right regarding, such financial fraud.  That is, Great Lakes would transform preemption into immunity.

As to abuse of process, Great Lakes argues that although ECMC and ED never provided me with a hearing that Great Lakes is innocent.  But for the fact that Great Lakes transferred the debt to ECMC during my bankruptcy to a company it full well knew was unscrupulous, I could have and would have been able to pay-off the debt and obtain the "fresh start" I was entitled to.  But for the fact that Great Lakes somehow confused ECMC about the balance due, I could have and would have been able to pay-off the correct amount.  But for the fact that Great Lakes stood idle as I complained to it about what was happening, this senseless decade old dispute could easily have been properly resolved.  Instead, the Opposition Parties acted in unison each playing a purported "limited" role to deny me my rights and to coerce me into paying more than what was legally owed.  It was and is a fraud perpetrated upon me and every taxpayer.  Moreover, the abuse of process is not limited to denial of the hearing ECMC promised in 1999, but also this legal action – the Opposition Parties have purposely abused process to deny me my discovery rights, to help cover up the fraud, and to ensure that corrections to the amount owed are never made.  And they do so using the most powerful entity on Earth:  the U.S. federal government -- threatening and coercing me at every turn.

Great Lakes does not dispute that the Opposition Parties did not produce copies of any terms and conditions pages before the FATPC was dismissed.  Nor does Great Lakes dispute that no one has ever produced a copy of the "Statement of Borrower's Rights And Responsibilities," which contain various additional contractual terms and conditions.  And yet Great Lakes argues that I failed to allege in my FATPC that any of those provisions "require Great Lakes to give [me] copies of documents."  (GLat26.)

In fact, the application pages themselves state in block lettering above the spot for the borrower to sign: "… YOU ARE ENTITLED TO AN EXACT COPY OF ANY DOCUMENT YOU SIGN. YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT …." See CR 73-1 at 5, 7, 9, 11, 13 and 15; CR 79 at 16:8-10. Great Lakes was thus clearly contractually required to both provide a full copy of the purported loans (including the "Statement of Borrower's Rights And Responsibilities") and to allow me to pay off the balance due. Instead it transferred the debt to an unscrupulous ECMC (without notice and during my bankruptcy) and ECMC refused to do either and no matter how much I complained to Great Lakes (and ECMC and ED, etc.), they all did nothing. For Great Lakes to allege in its Answering Brief that it provided copies of what they purport to be true and correct copies of the backsides of those application pages (on March 30, 2012 pursuant to subpoena and after dismissal) simply confirms (1) that Great Lakes breached its contractual duty to provide copies and (2) that there was no accrual and that many of my claims did not become ripe until well into this litigation. And, again, for Great Lakes to claim that because I refuse to stipulate that all the documents produced by the Opposition Parties are true and correct copies means that I have no breach of contract claim is just the most far flung nonsense. If there were no contracts at all then why was Great Lakes taking my money for more than a decade prior to my filing bankruptcy? For heaven's sake, why this litigation at all if there were no contracts? Why is there a judgment against me on contracts that Great Lakes cannot acknowledge existed in any form whatsoever? Since Great Lakes represents to this Court that there are still GIMF as to whether the copies of the application pages attached to plaintiff U.S.'s complaint evidence any contracts that Great Lakes was ever involved in, why should any court doubt me when I say the same? The Opposition Parties have the burden – it is they who

want to have their cake and eat it too … and have frosting smeared all over their
dirty little mouths.

Great Lakes misrepresents the record again when it represents that "[t]he
TPC admits that Great Lakes no longer 'owns' Gorski's loans. (C.R. 35, ¶37)."
(GLat27.) But CR 35 at ¶37 alleges only what Great Lakes told me, not whether
what was told to me was in fact true. And the Opposition Parties all disagree as to
when the debt was purportedly transferred to ECMC, which affects Great Lakes'
obligations, whether the automatic stay was violated, the assessment of fees, and a
proper accounting. Concealment and gamesmanship on a simple debt that the
Opposition Parties were duty-bound to try to collect in good faith – not obstruct for
their personal financial gain at the expense of borrowers and taxpayers.

Next, Great Lakes represents: "Similarly, it [the FATPC] fails to allege that
Great Lakes even claims that Gorski owes it money." (GLat27.) More
schizophrenic mumbo-jumbo. I have repeatedly explained to the Opposition
Parties and the court below in writing and in meet and confers that not only do I
allege conspiracy (in which each co-conspirator is responsible for the acts of all
other co-conspirators), but that this was one debt transferred between various
parties (including Sallie Mae) without notice. While I was obviously not privy to
what happened between the Opposition Parties when it happened, full and proper
discovery will provide evidence for a jury to make all these GIMF determinations.
Each of the Opposition Parties provided oral representations of fact which
routinely conflicted with one another; each resisted putting any of it in writing; but
nonetheless many documents produced now demonstrate all this.

Great Lakes argues "Nowhere in the TPC does Gorski specifically allege
that Great Lakes took control of Gorski's wages or income tax refunds." (GLat28.)
Since I wasn't at the IRS office when it happened, how am I to allege who did
what? So, if three bozos burglarize the offices of Albert & Will, LLP and there are

no cameras to determine who did it but what is taken are all the files in XYZ case, I suppose Great Lakes would be helpless to suspect that anyone from the XYZ case took those documents. This is a game the Opposition Parties play in every student loan case: the borrower knows his income tax refund was taken, is told it was taken because of a student loan debt, knows he had no prior notice or opportunity for a hearing, but no one admits precisely "who did it." (More laughter among the Opposition Parties and their counsel no doubt.) But that too is a clear abuse of process (garnishment and offset orders issued under color of law).

I made various FOIA and Privacy Act requests in or about 2011 and obtained only a handful of documents. Great Lakes argues "Gorski admits in the Complaint that Great Lakes is not a federal 'agency.' (C.R. 35, ¶62(d)). Thus, Great Lakes cannot violate either the Freedom of Information Act or the Privacy Act of 1974." (GLat30.) But Great Lakes was allegedly the only entity with the purported backsides of the application pages. Plaintiff U.S. was required to produce all documents in its possession, custody and control. So why was I provided only a handful of documents by the government? Great Lakes and ECMC are fiduciaries. When they ask for and receive taxpayer dollars from the government when they claim a borrower refuses to pay, why and how do those documents remain concealed from production? Were they not required to provide all documents to plaintiff U.S. when taxpayers paid them off (and plaintiff U.S. thereafter filed suit to recover that payoff)? When the government acts together with private industry to maintain student loan records those private companies should not be heard to contend that they had nothing to do with the government not producing the documents that they admit they possessed all along. *Richardson*, *Lugar*, *Bivens*, *Schowengerdt*, *Boney*, *Sarro*, and their progeny.

Thus, Great Lakes proudly concludes "it is not alleged in the TPC that Great Lakes acted under color of federal law or in conjunction with federal actors ...

31

much less that Gorski was deprived by Great Lakes of any Constitutional rights, despite his conclusory allegations." (GLat32.) But see CR 35 at 152 ("… Third Party Defendants, under color of any statute, ordinance, regulation, custom, or usage, subjected Gorski within the jurisdiction of the United States to the deprivation of his rights, privileges, and/or immunities secured by the Constitution and laws…."). And if all the allegations are not sufficient, I most certainly could and would amend the third party complaint to allege more facts and elements and even more causes of action, including False Claims Act violations. CR 35 at 153.

Great Lakes argues that it "produced all of the responsive documents" (GLat33) but it did not. Great Lakes produced only purported copies and refused to allow access to the alleged originals. It opposed my motion to compel and the lower court only partially granted my motion leaving the Opposition Parties free to continue to refuse to produce documents for inspection and to continue to conceal production of copies of various documents with impunity.

Great Lakes urges this Court to affirm the lower court's partial denial of my motion to compel. Great Lakes admits the order simply rubber stamped what the Opposition Parties wanted ("The Magistrate denied the Motion with respect to Great Lakes on June 12, 2012 for 'the reasons set forth by Great Lakes. (C.R. 135)." (GLat34, mis-citing and misquoting CR 128 at 5.) Rather than showing how correct the court was, it raises again the issue of the court's bias in favor of the Opposition Parties. The "newly found" backsides of the application pages issue alone is enough to require Great Lakes to provide access to the purported original documents. The authenticity of the documents is clearly an issue – were these the actual backsides, plaintiff U.S. could and would have produced them in discovery or pursuant to the 2011 FOIA/Privacy Act requests long before March 30, 2012. Moreover, there were many other documents for which copies have not

been produced and other issues (for example and without limitation, Great Lakes refused to produce a privilege log for documents withheld). CR 120-121.

Lastly, the reason I served subpoenas after the motion to dismiss was because there was a discovery hold and the FRCP require parties to produce documents. But for the wrongful dismissal without leave to amend before discovery could commence, full discovery would have provided more evidence. Furthermore, the lower court stated it would not entertain any evidence in opposition to the motions to dismiss (not even as a proffer). See, e.g., CR 107 at 3-4. Which again, highlights why dismissal without leave to amend (after the first challenge to my TPC) is so draconian and improper. Indeed, plaintiff U.S.'s initial private counsel promised that I would have access to the alleged contracts. CR 11-1. Similarly, Judge Wu denied my motion for a more definite statement by way of accounting and documentation contending "[W]here the information sought by the moving party is available and/or properly sought through discovery, the motion should be denied." CR 11 and 17 at 2. But the Opposition Parties obstructed every step of the way. Plaintiff U.S. produced documents piecemeal before and after various motions to compel and continued to conceal several categories of documents and many key documents, when the newly produced documents in March/April 2012 were obviously within plaintiff U.S.'s "possession, custody or control" all along. Numerous documents remain missing to this day – including my correspondence with ED.

Pursuant to Federal Rule of Civil Procedure 26(d), a party "may not seek discovery from any source" prior to the conference required by Rule 26(f), which must take place at least 21 days before the initial Case Management Conference. Fed. R. Civ. P. 26(d), (f). The joint conference took place only shortly before the report was filed on 2-13-12. CR 76.

Courts within the Ninth Circuit generally use the "good cause" standard to determine whether to permit discovery prior to a Rule 26(f) conference. *See, e.g.*, *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C 09-05812 JW (PVT), 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. In determining whether good cause justifies expedited discovery, courts commonly consider factors including: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009).

When limitations period is dependent on discovery of cause of action, resolution of statute of limitations issue is normally question of fact; thus, summary judgment was not appropriate to resolve delayed discovery issues in fraud action, where more than one reasonable inference could be drawn from undisputed facts. *Cleveland v. Internet Specialties West* (2009) 171 C.A.4th 24, 33, 88 C.R.3d 892.

## IV.  **Plaintiff U.S.'s Answering Brief.**

Had ED kept copies of all the documents from the beginning it would not be missing the pages that GL and ECMC are missing.  Thus, it is quite clear that ED obtained copies only after it became the holder (probably 10 years after 1999 or 2009).

Refusing to allow the inspection of original documents to help prove that such documents are fraudulent cannot be harmless error.  Moreover, given that the original application pages were purposefully destroyed providing access to the

34

purported electronic copies with all the metadata is essential.  Still further, the absence of so many key documents creates numerous GIMFs that must be determined by a jury.  See, e.g., U.S. Constitution, Seventh Amendment (right to jury where the value in controversy exceeds twenty dollars).

Indeed, Great Lakes argues that none of the wrongdoings complained about "give rise to affirmative causes of action … at best, Gorski's claims simply theoretically amount to a defense to the United States' Complaint."  CA9 Dckt #22, GL Ans. Brf., at 4.  Similarly Great Lakes (and now ECMC) argue that "if he couldn't bring his claim now he couldn't bring it then"
-- if such learned counsel from these law firms and the U.S. Department of Justice all believe that such claims could not have been brought in 1999/2000, how and why should any court rule that such claims accrued in 1999/2000?  And if none of them see accrual of viable claims then why am I held to a higher standard.  Moreover, since the Opposition Parties contend that the evidence presented now (including much evidence I did not have until this litigation) is insufficient to even raise a single GIMF, how could there have been accrual?  And if there was no accrual why can't those responsible for the inflated balance and refusal to accept and obstruction in pay-off be held accountable now?  The full accounting has not even been produced let alone entered into evidence.  What accrual?  The accrual in 2014 when upon remand the Opposition Parties finally admit that they have no full and accurate accounting?

It seems to me that this logic would require that this Court either rule that alleged debtors have no right to challenge erroneous alleged balances or that they do have the right to challenge it but only if the Opposition Parties either admit it or agree to provide sufficient evidence to prove it.  And the latter ruling amounts to former.

To rule that such allegations can only amount to defenses (CA9 Dckt #22, GL Ans. Brf., at 4), would mean that no debtor has a right to bring a False Claims Act complaint.  CR 35 at ¶153.  Which means that taxpayers will continue to be defrauded too.[11]

---

[11] When guarantors illegally inflate the balance due and obstruct payoff the harm first comes to the debtor.  That harm comes many years or decades after the secret and illegal overcharges:  the harm occurs when the amounts garnished from wages and intercepted from tax refunds exceeds the legal amount due.  But of course all this occurs without any semblance of due process:  no opportunity for a hearing and oftentimes no formal notice at all.  However, when the debtor cannot pay and the federal government pays (as the guarantor) and if that money is never

**Plaintiff U.S.**

On appeal the DOJ represents only plaintiff U.S.; the other federal appellees – namely ED, Arne Duncan, DOJ, and Eric Holder (as well as Goldsmith & Hull, William I. Goldsmith, Jack D. Hull, Eric S. Mintz, and ROES 1-10) have not appeared or filed an answering brief. CA9 Docket No. 27 at 1 and 33; see also, the "parties" and "attorneys" sections of CA9 Docket. Thus, the appeal has been unopposed as to those non-appearing parties and should thus be reversed and remanded as to them.

The Court below ordered the parties to talk settlement, which I did in good faith. CR 110 at 3. Mr. Whittlesey told me he would advise the judge about our discussion, but nothing was ever filed. If there has been any kind of ex parte communication I believe false claims have been made against me and I should have been provided an opportunity to be heard on anything the court was told.

Plaintiff U.S. argues that I executed promissory notes based on its own self-serving and clearly defective declaration of Rubio Canlas. (USat4 citing SER 082 at ¶6.) Canlas has no personal knowledge of my signature, has been found to have filed other overreaching declarations in federal student loan litigation, and which was contested. Not only does one signature have a backwards looping "J" and another have an obviously traced signature, but the application pages are incomplete for lack of the backside terms and conditions and the accompanying terms and conditions in the "Statement of Borrower's Rights And Responsibilities." Additionally some lack a lender signature and other information including interest rate and none of the original documents have been produced – indeed, the Opposition Parties admit to destroying them. There is no competent evidence that these application pages accurately reflect the contracts entered into and raise numerous GIMF on all pleadings thus alone precluding dismissal of my FATPC and judgment based on the unsupported demand from the Opposition Parties.

Similarly, the DOJ falsely represents that "Gorski defaulted in 1998." There are GIMF regarding whether and when anyone defaulted. Great Lakes admitted

---

collected, the taxpayer pays. That is, the taxpayer pays not only the original amount due and legal interest and legal collection fees, but also pays on the amount over and above that – the illegal portion. Not to mention that ECMC is a 501(c)(3) "non-profit" corporation and thus not even paying taxes on the gobs and gobs of money they make legally from the student loan racket with its above-market interest rates and collection costs assessed (and despite that a large portion of those assessed costs are never actually incurred). It winds up not only being "a racket" but one that no one can stop much less curtail.

that my debt did not go into default in 1998. CR 89-1 at ¶17 at 15:21-27. I maintain Great Lakes and ECMC defaulted in 1999 during my bankruptcy but obstructing pay-off and concealing evidence of the purported debt and an accurate balance among numerous other things.

Still further, the amount of indebtedness set forth by plaintiff U.S. is inaccurate and improperly supported. (USat4.) My declarations submitted under penalty of perjury set forth more than mere speculation. Indeed, it would be speculation to accept as fact many of the claims made by the Opposition Parties, not the least of which is amount purportedly owed.

Plaintiff U.S. argues the case against me was established by "admissible evidence." That is simply not true. Judgment was entered against me despite the fact that I entered admissible evidence of my statements (declarations under penalty of perjury) and documents corroborating my points. These raise numerous issues of GIMF. Plaintiff U.S.'s reliance on Canlas is misplaced – he is a bureaucrat who will say whatever plaintiff U.S. wants. I filed multiple requests to examine Canlas but was denied that right.

Sovereign immunity should not protect any of the Opposition Parties from committing this financial fraud. The NSLDS is a database that the Opposition Parties can change whenever they want. Indeed, I showed numerous reasons why the NSLDS and other records by the Opposition Parties were unreliable and which raise GIMF for a jury to determine. U.S. Constitution, Seventh Amendment.

Plaintiff U.S. argues "the defendant signed it." (USat7.) But "it" refers to (1) seven purported applications which may or may not have turned into loans, (2) Great Lakes lost or destroyed the originals, (3) full copies of which are not in evidence, and (4) the copies that are available appear to have been tampered with and are missing critical terms, such as interest rates and lender signatures.

Plaintiff U.S. argues that the burden is "not upon the creditor to show that all appropriate credit to account had been given; rather, guarantors had that burden, under their denial that proper amounts had been credited." (USat8.) That assumes, however, that all documents and a full and complete accounting has been provided – which documents and full and complete accounting were not provided to me – not even after several motions to compel, reconsider, etc. Plaintiff U.S. quotes my statement about what the "principal balance" set forth by others "might represent" something assuming numerous premises -- but that is in no way an admission of an accurate accounting or an accurate balance at any juncture. (USat8.) Indeed, the Opposition Parties have always concealed documents, accountings and how they arrived at their various demands.

Plaintiff U.S. quotes *Nat'l Union* for the proposition that my due process right to cross-examine Canlas can be denied whenever the DOJ decides the defendant has an "unspecified hope" in doing so. (USat9.) Canlas has been found

to overreach in other student loan litigation and there are numerous good reasons to doubt all of his statements. The court below did not properly consider all my objections to Canlas or plaintiff U.S.'s documentary evidence.

Plaintiff U.S. argues that since I never claimed that my signatures had to "forged" that I must then concede they are genuine. (USat10.) Hardly. These are *copies* of application pages. It might be my genuine signature cut and pasted onto a fraudulent document, it might be my signature but the amounts were altered, it might be an application that never became a loan, it might be any number of things. It is the Opposition Parties' *speculation* that the exhibits to plaintiff U.S.'s complaint are genuine, are contracts, are enforceable, and that the balance alleged is accurate in any way. Since the Opposition Parties purposefully destroyed documents and refused to accept pay-off during my bankruptcy and constantly obstructed, these issues are now GIMF for a jury to determine. And the U.S. ought not automatically side with ECMC with such overwhelming evidence of fraud. As I have urged Mr. Whittlesey many times: do a 180 on this and help remedy the financial fraud perpetrated by ECMC and others. Provide the documents that would be the basis of my False Claims Act cause of action and be on the side of justice – or, at the very least – properly investigate this without automatically siding with anyone. Plaintiff U.S.'s claim that I "never disputed the validity of [my] signatures on the notes" is utter hogwash. From the very beginning I referred to these as alleged application pages – they are not "notes" and they have not been shown to be valid. Plaintiff U.S. as the plaintiff has the first burden. Moreover, I shown again and again that these copies are incomplete, untrustworthy and in any event raise numerous GIMF.

Plaintiff U.S. claims immunity from the fraud claims, but the negligence claims and 2011 FOIA/Privacy Act requests claim all are clearly viable.

ECMC

I am informed by the Ninth Circuit court clerk's office that I need not be concerned about ECMC's (and Great Lakes') requests for dismissal based on that fact that my informal brief did not meet the requirements of a formal brief. (ECMCat1.) I filed a motion with the Ninth Circuit for relief on these issues. CA9 at Dckt 36 and 37.

ECMC raises numerous additional claims that were not raised below or properly tested in discovery. If the Court is persuaded by any of these new arguments, affirmance would be improper – instead, the matter should be remanded so that I may amend my FATPC and for discovery and determinations on the GIMF raised.

ECMC falsely alleges "the last conduct asserted to have been taken by ECMC occurred in 1999." (ECMCat5.) ECMC claims that its involvement

"began and ended within a matter of weeks in early 1999." (ECMCat6, same wording as Great Lakes' answering brief.) There is no competent evidence showing that at all, let alone a finding or stipulation. The notion that this debt had no owner between April 1999 and 2011 is absurd. ECMC clearly claimed to hold title to this debt from 1999 to 2000, and probably for ten years from the beginning of 1999.

Few of the Opposition Parties' representations of fact are accurate. ECMC also argues "clearly any such conversion had to have occurred in 1999 or before." (ECMCat12.) No such finding was made. No garnishment or tax refund offset occurred before my bankruptcy; indeed, Great Lakes told me that I was not in default prior to filing bankruptcy and I relied upon that representation.

ECMC's argument that there is no private right of action under HEA (ECMCat12) would appear to make ECMC immune from any erroneous accounting and thus any such interpretation violates due process and federal common law prohibiting fraud. Moreover, there clearly is negligence and breach of contract for inflated demands and refusal to accept payoff.

ECMC argues that since I assert that its overcharges are embedded in the demand plaintiff U.S. makes now in this litigation that I knew back in 1999 that plaintiff U.S. would make this erroneous demand today. No, I am not a time traveler. I know what others told me but since each of the Opposition Parties gave me conflicting stories I never was sure about the veracity of any of their claims.

ECMC raises its various duties to show "due diligence" in its attempts to collect debts, but the documents produced to date by plaintiff U.S. and ECMC (in April 2012 after dismissal and pursuant to subpoena) demonstrate that ECMC followed few of those regulations – including sending "dunning letters." I never received them and ECMC never produced them. At best these raise GIMF requiring remand, not affirmance based on such a sketchy and questionable record.

ECMC, like Great Lakes, cites *Telesaurus* for the proposition that denial of leave to amend my FATPC was proper because (1) I amended before ECMC was served (pursuant to Judge Wu's order that I had a short amount of time to amend as a matter of right), and (2) ECMC's frivolous and bad faith argument that ECMC held the debt for only a matter of weeks in early 1999. I was and have been in the unenviable position of crafting a complaint to show causes of action that obviously are proper but which will be shown to be true with documents produced after dismissal and documents yet to be produced but which obviously had been in the possession of the Opposition Parties. If the Opposition Parties either turn over all documents or admit they do not have them (and be barred at trial from producing anything more in their own favor), I can and will provide an amended complaint that will lead to a jury verdict clearly in my favor. The long and short of it is this: the financial fraud perpetrated by the Opposition Parties is clear wrongful and the

interests of justice require that the case be remanded to an impartial court and allowed to go to trial on the merits for a full determination of the many GIMF on all the pleadings.

## STANDARD OF REVIEW

*De novo* (plenary review):  Legal decisions on questions of law including questions of jurisdiction (including supplemental jurisdiction), *stare decisis*, standing, mootness, preemption, claim/issue preclusion, immunity, due process, statute of limitations, and interpretation of contract/statutes/regulations are all reviewed *de novo*.  Both conclusions of law and mixed questions of law and fact are reviewed *de novo*. The granting of dismissal under Rule 12(b)(1) or (b)(6), or summary judgment (viewing evidence and inferences in the light most favorable to the nonmoving party) are reviewed *de novo*.

Dismissal of a complaint without leave to amend is improper unless it is clear, upon *de novo* review that the complaint could not be saved by any amendment. *AE ex rel. Hernandez*, 666 F.3d at 636; *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  There is a strong policy permitting amendment.  *Plumeau v. School Dist. No. 40*, 130 F.3d 432, 439 (9th Cir. 1997); *Pierce*, 76 F.3d at 1043.

Whether information sought by discovery is relevant may involve an interpretation of law that is reviewed *de novo*. *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1998) (state law).  The district court's rulings on the scope of the attorney-client privilege are reviewed *de novo*.

If the district court fails to make factual findings, the decision on a motion for sanctions is reviewed *de novo*.  *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990).  Whether discovery sanctions against the government are barred by sovereign immunity is a question of law reviewed *de novo*. See *U.S. v. Woodley*, 9 F.3d 774, 781 (9th Cir. 1993).

Whether *laches* is available as a potential defense is a question of law reviewed *de novo*. See *In re Beaty*, 306 F.3d 914, 920 (9th Cir. 2002); *Wyler Summit P'ship v. Turner Broadcasting Sys.*, 235 F.3d 1184, 1193 (9th Cir. 2000).

Whether a magistrate judge has jurisdiction is reviewed *de novo*.  *Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004); *Anderson v. Woodcreek Venture, Ltd.*, 351 F.3d 911, 915 (9th Cir. 2003) (remanded because fact issues remained as to whether consent to magistrate was voluntary).

Whether the automatic stay provisions of the Bankruptcy Act have been violated is a question of law reviewed *de novo*.  *Eskanos & Adler v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002); *In re Pettit*, 217 F.3d 1072, 1077 (9th Cir. 2000).

A trial court's decision whether to permit oral argument is reviewed for an abuse of discretion. *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (noting abuse of discretion may occur if party would suffer unfair prejudice from the denial of oral argument);

"Whether evidence is properly authenticated is a question of law subject to *de novo* review." M/*V Am. Queen v. San Diego Marine Constr. Corp*., 708 F.2d 1483, 1491 (9th Cir. 1983). The court's interpretation of the hearsay rule is reviewed *de novo*. *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1122 (9th Cir. 2004).

The court's decision to grant or deny summary judgment on a contract claim is reviewed *de novo*. *Altera Corp. v. Clear Logic, Inc*., 424 F.3d 1079, 1091 (9th Cir. 2005) (affirming denial of motion for summary judgment); *Southern Cal. Painters v. Best Interiors, Inc*., 359 F.3d 1127, 1130 (9th Cir. 2004) (noting summary judgment is inappropriate when there is a question regarding mutual intent). When extrinsic evidence is not considered and the court limits its review to the four corners of the contract, review is *de novo*. See *1.377 Acres of Land*, 352 F.3d at 1264; *Shaw v. City of Sacramento*, 250 F.3d 1289, 1293 (9th Cir. 2001).

On a motion for summary judgment the court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999); *Far Out Prods., Inc. v. Oscar*, 247 F.3d 986, 992 (9th Cir. 2002) (defining "genuine" and "material").

Whether the district court selected the correct legal standard in computing damages is also reviewed *de novo*. *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002); *Neptune Orient Lines, Ltd. v. Burlington Northern and Santa Fe Ry Co.*, 213 F.3d 1118, 1119 (9th Cir. 2000); *Evanow v. M/V NEPTUNE*, 163 F.3d 1108, 1113-14 (9th Cir. 1998).

Whether interest is permitted as a matter of law is reviewed *de novo*. *Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 716 (9th Cir. 2004) (as amended) (deciding whether prejudgment interest available under Copyright Act); *McCalla v. Royal MacCabees Life Ins. Co*., 369 F.3d 1128, 1129 (9th Cir. 2004) (deciding whether state or federal law applies).

Whether a statute of limitations has tolled is also reviewed *de novo*. *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (reviewing for abuse of discretion the district court's decision that defendants should not be equitably estopped from asserting a statute of limitations defense). Civil rights and constitutional claims asserted under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), are reviewed *de novo*. Whether a plaintiff must exhaust or has exhausted administrative remedies are both reviewed *de novo*. *Great Basin Mine Watch v.*

*Hankins*, 456 F.3d 955, 961 (9th Cir. 2006); *Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003); *Chang v. United States*, 327 F.3d 911, 919 (9th Cir. 2003).

When a magistrate judge is assigned without consent (as here), the standard of review of the Magestrate's orders is *de novo*.

A district court's decision denying enforcement of an administrative subpoena is reviewed *de novo*. *NLRB v. The Bakersfield Californian*, 128 F.3d 1339, 1341 (9th Cir. 1997); *EEOC v. Fed. Express Corp*, 558 F.3d 842, 846 (9th Cir. 2009); *In re Estate of Covington*, 450 F.3d 917, 919 n.4 (9th Cir. 2006); *NLRB v. The Bakersfield Californian*, 128 F.3d 1339, 1341 (9th Cir. 1997).

Review of the amount of damages is sometimes the clear error standard[12] but here the judgment amount is a disputed GIMF since, among other things, a full accounting was never produced (thus a jury question) and the evidence demonstrates fraud.

Factual findings made by a magistrate judge are reviewed for clear error. *Man-Seok Choe v. Torres*, 525 F.3d 733, 741 (9th Cir. 2008).

The best evidence rule provides that the original of a "writing, recording, or photograph" is required to prove the contents thereof. Fed. R. Evid. 1002.

Clear error:

Findings of fact are based solely on written record. *R.B., ex.rel. F.B. v. Napa Valley Unified School District*, 496 F.3d 932, 937 (9th Cir. 2007); *Amanda J. ex rel. Annette J. v. Clark County Sch. Dist*., 267 F.3d 877, 887 (9th Cir. 2001).

Abuse of discretion:

A trial judge's denial of discovery/sanctions is usually reviewed for abuse of discretion. However, there are due process limitations, including for instance: rights to discovery, jury trial, and to cross-examine a witness (Rubio Canlas). Whether the district court afforded due process presents a legal question subject to *de novo* review. *Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1458 (9th Cir. 1996). Additionally, discovery denied for relevance or as attorney-client privileged is reviewed *de novo*. *Cacique, Inc. v. Robert Reiser & Co*., 169 F.3d 619, 622 (9th Cir. 1998) (state law); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 130 (9th Cir. 1992). Additionally, a court's conclusion that documents are exempt from disclosure is reviewed *de novo*. *Lissner v. U.S. Custom Serv*., 241 F.3d 1220, 1222 (9th Cir. 2001); *Klamath Water Users Prot.*

---

[12] A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

*Ass'n v. DOI*, 189 F.3d 1034, 1037 (9th Cir. 1999).  When the imposition of sanctions turn on the resolution of a legal issue, review is *de novo. Palmer v. Pioneer Inn Assoc., Ltd*., 338 F.3d 981, 985 (9th Cir. 2003).

Recusal motions apply the law of the regional circuit (28 USC § 455); the Ninth Circuit uses an abuse of discretion standard.  However, the lowest standard seems too deferential if the two judges are buddies or if the judge considering the motion was not randomly assigned as required.  I believe there was sufficient evidence of bias when the motion to recuse was decided, but if not, there certainly is sufficient evidence of bias since then such that the case should be remanded to a new judge.

Respectfully submitted,

Dated:  September 3, 2013          JEROLD M. GORSKI, *pro se*

_____